UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CITILINE HOLDINGS, INC., Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:08-cv-03612-RWS **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| ISTAR FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |

**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
BY DEFENDANTS' ISTAR FINANCIAL INC., JAY SUGARMAN,
NICHOLAS A. RADESCA, CATHERINE D. RICE AND TIMOTHY J. O'CONNOR**

For their Answer and Affirmative Defenses to Plaintiffs' Consolidated Amended Class Action Complaint for Violations of Securities Laws (the "Complaint") in the above-captioned litigation, iStar Financial Inc. ("iStar"), Jay Sugarman, Nicholas A. Radesca, Catherine D. Rice and Timothy J. O'Connor (collectively, the "iStar Defendants"), state as follows:

1.      The allegations of paragraph 1 assert arguments and legal conclusions to which no answer is required. To the extent further response is required, the iStar Defendants deny the allegations of paragraph 1 except they admit that Plaintiffs purport to bring suit on behalf of a putative class of shareholders who purchased the common stock of iStar between December 6, 2007 and March 6, 2008 for alleged violations of the Securities Act and the Exchange Act.

2.      The allegations in paragraph 2 assert arguments and legal conclusions to which no answer is required. To the extent further response is required, the iStar Defendants admit that Plaintiffs purport to assert claims under Sections 11, 12(a)(2) and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

3.     The allegations in paragraph 3 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants admit the Court possesses jurisdiction over this action.

4.     The sentence 1 of paragraph 4 states arguments or legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants admit iStar maintains it executive offices in this District, venue in this District is appropriate as to them, and deny the remaining allegations of paragraph 4.

5.     The allegations in paragraph 5 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations.

6.     The allegations in paragraph 6 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 6.

7.     The iStar Defendants admit that iStar is a real estate investment trust which primarily provides custom tailored financing to high-end private and corporate owners of real estate, including senior and mezzanine real estate debt, senior and mezzanine corporate capital, corporate net lease financing and equity, and iStar's executive offices are located at 1114 Avenue of the Americas, 39th Floor, New York, NY 10036.  The iStar Defendants deny the remaining allegations in paragraph 7.

8.     Insofar as "all relevant times" refers to the putative class period defined in paragraph 1, the iStar Defendants admit the allegations in paragraph 8.

9.     The iStar Defendants admit that:  Defendant Nicholas A. Radesca was iStar's Chief Accounting Officer during the putative class period until his resignation effective February

29, 2008; iStar announced Mr. Radesca's resignation on March 6, 2008; and Mr. Radesca signed the Registration Statement. The iStar Defendants deny the remaining allegations in paragraph 9.

10.     The iStar Defendants admit that: Defendant Catherine D. Rice was iStar's Chief Financial Officer during the putative class period; Ms. Rice signed the Registration Statement; and Ms. Rice assumed certain additional duties following the resignation of Mr. Radesca. The iStar Defendants deny the remaining allegations in paragraph 10.

11.     The iStar Defendants admit that: Defendant Timothy J. O'Connor was iStar's Chief Operating Officer during the putative class period; and Mr. O'Connor was responsible for developing and managing iStar's risk management and due diligence operations, participating in the evaluation and approval of new investments and coordinating iStar's information systems. The iStar Defendants deny the remaining allegations in paragraph 11.

12.     The iStar Defendants admit that the Complaint refers to Defendants Sugarman, Rice, Radesca and O'Connor collectively as the "Individual Defendants."

13.     The iStar Defendants admit that: the Complaint refers to defendants Citigroup, Morgan, Wachovia, B of A, Deutsche Bank, and UBS, collectively as the "Underwriter Defendants"; the Underwriter Defendants are investment banks; and they are some, but not all, of the investment banks that purchased from iStar 8 million shares of iStar's common stock in December 2007 (the "Secondary Offering") on the terms described in iStar's public filing with the Securities Exchange Commission ("SEC") pursuant to SEC Rule 424(b)(3) and the underwriting agreement dated December 13, 2007 between iStar and all the underwriters of the Secondary Offering. The iStar Defendants deny the remaining allegations in paragraph 13.

14.     The allegations in paragraph 14 state an argument or legal conclusion to which no answer is required. To the extent further response is required, the iStar Defendants deny that a class has been certified in the above-captioned litigation. The iStar Defendants admit that

Plaintiffs purport to bring suit on behalf of a putative class of shareholders who purchased the common stock of iStar between December 6, 2007 and March 6, 2008, and that Plaintiffs purport to exclude the iStar Defendants and certain related persons and entities from the proposed class. The iStar Defendants deny the remaining allegations in paragraph 14.

15.    The allegations in paragraph 15 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants admit iStar sold 8 million shares of its common stock to the underwriters of its Secondary Offering and deny the remaining allegations in paragraph 15.

16.    The allegations in paragraph 16 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 16.

17.    The allegations in paragraph 17 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 17.

18.    The allegations in paragraph 18 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 18.

19.    The allegations in paragraph 19 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 19.

20.    The iStar Defendants admit that:  iStar describes itself as a leading publicly-traded finance company focused on the commercial real estate industry; iStar is taxed as a real estate investment trust ("REIT"); iStar provides custom-tailored financing to high-end private and corporate owners of real estate, including senior and mezzanine real estate debt, senior and

mezzanine corporate capital, corporate net lease financing and equity; and, as of December 31, 2007, first mortgage/senior loans comprised 85% of the carrying value of iStar's loan portfolio and mezzanine/subordinated debt comprised 11% of the carrying value of iStar's loan portfolio. The iStar Defendants deny the remaining allegations in paragraph 20.

21.     The iStar Defendants admit the allegations in paragraph 21.

22.     The iStar Defendants admit that in the U.S. nationally, the rate of single-family home sales began to decline in 2006, single-family home sales prices declined in 2007, and this trend combined with many other factors contributed to a deterioration in the primary and secondary residential mortgage markets.  The iStar Defendants deny that (1) iStar was in the business of providing mortgages for the purchase of single-family homes, (2) the allegation in the third sentence of paragraph 22 that interest rates on most mortgage loans rose and that interest rates on residential mortgages drove down the value of loans in iStar's portfolio, and (3) the allegations contained in the second sentence of paragraph 22.  Further answering, the iStar Defendants state that according to the Federal Reserve, *none* of the rates set by it have ever reached 8.25%; the highest historical Fed Funds interest rate reported by the Federal Reserve was 8.00% on July 13, *1990*; in mid-2004 (June 30, 2004), the Fed Funds Rate was increased to 1.25%; the Fed Funds rate peaked on June 29, 2006 at 5.25% where it remained until the Federal Reserve *decreased* the rate to 4.75% on September 18, 2007.  The iStar Defendants deny the remaining allegations of paragraph 22, including, but not limited to, the extent to which this paragraph purports to identify any, let alone all, of the factors that impacted iStar's business during the putative class period.

23.     The iStar Defendants admit that: iStar is a REIT and federal tax laws require REITs to distribute at least 90% of their net taxable income to shareholders to maintain REIT status, and iStar faces many risks, including liquidity risks which iStar has continuously and

explicitly disclosed in its public filings, including its annual reports on SEC Form 10-K.  The iStar Defendants deny the remaining allegations in paragraph 23.

24.    The iStar Defendants admit that:  on May 21, 2007, iStar entered into a definitive asset purchase agreement with Fremont Investment & Loan ("Fremont") which was then a subsidiary of Fremont General Corporation (the "Fremont APA"); closing on the Fremont APA took place on July 2, 2007; on the closing date, iStar acquired Fremont's commercial real estate loan portfolio and commercial real estate lending business; and the aggregate principal amount of the loans acquired was approximately $6.5 billion as of March 31, 2007.  The iStar Defendants deny the remaining allegations of paragraph 24.

25.    The iStar Defendants admit the allegations in paragraph 25.

26.    The iStar Defendants deny that the "Company" is defined in the Complaint, but admit that closing on the Fremont APA took place on July 2, 2007 and the aggregate principal amount of the loans iStar acquired on that date were valued as of March 31, 2007 at approximately $6.5 billion.  The iStar Defendants also admit that approximately 130 employees of Fremont joined iStar upon the closing of the Fremont APA.  The iStar Defendants deny the remaining allegations of paragraph 26.

27.    The iStar Defendants deny that the allegations of paragraph 27 fairly and completely describe the consideration iStar paid under the Fremont APA and state that the Fremont APA is a publicly available document, which iStar filed on Mary 24, 2007 with the SEC as Exhibit 2.1 and that the Fremont APA is the best evidence of its contents.  Further answering the iStar Defendants state that upon closing of the Fremont APA, iStar paid Fremont approximately $1.9 billion in cash, transferred to Fremont a senior A-participation interest in the acquired portfolio of loan assets representing an approximately 70% interest in the portfolio, and iStar retained a 30% B-participation interest in the acquired portfolio of loan assets with an

approximate $2.1 billion principal amount.  The iStar Defendants deny the remaining allegations of paragraph 27.

28.    The iStar Defendants admit that on June 26, 2007, iStar entered into a 364-day interim financing facility in the amount of $2 billion and the proceeds of that loan were used to fund a portion of iStar's acquisition costs for its acquisition of the commercial real estate lending business and existing portfolio of Fremont.  Further answering, the iStar Defendants state the interim financing agreement was disclosed as Exhibit 10.2 to iStar's July 2, 2007 SEC filing on Form 8-K and that agreement is the best evidence of its contents.  The iStar Defendants also admit that on May 23, 2007, iStar stated that pursuant to the terms of the Fremont APA, it had agreed to fund up to approximately $4.4 billion of existing unfunded loan commitments associated with the portfolio, but that the final purchase price also would be subject to adjustments to reflect agreed upon pro-rations.  Further answering, the iStar Defendants states that as of the Fremont APA closing date, iStar was obligated to fund approximately $3.74 billion of unfunded loan commitments associated with the acquired portfolio.  The iStar Defendants deny the remaining allegations of paragraph 28.

29.    The iStar Defendants admit that iStar held its second annual Investor Day Conference on December 6, 2007, at the New York Public Library, and certain members of iStar's management presented on various aspects of iStar's business, including but not limited to information relating to iStar's balance sheet and investments.  The iStar Defendants deny the remaining allegations in paragraph 29.

30.    The iStar Defendants admit that during the Investor Conference certain members of iStar's management expressed their opinions and beliefs:  (1) that iStar is conservative in valuing the assets in its loan portfolio, and (2) that certain facts about iStar's business were strengths.  The iStar Defendants deny paragraph 30 alleges any representations of fact made by

any member of iStar management. Further answering, the iStar Defendants state paragraph 30 contains selective and incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer the Court to the transcript which is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 30.

31. The iStar Defendants admit that during the Investor Day Conference one or more members of iStar's management (1) spoke at length regarding the loans on iStar's watch list and the loans iStar identified as non-performing, and (2) provided an overview of iStar's process for identifying NPLs and iStar's monitoring of NPLs. Further answering, the iStar Defendants state that a transcript of the Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 31.

32. The iStar Defendants admit that during the Investor Day Conference certain members of iStar management expressed their opinions and beliefs: (1) regarding the distinctions between iStar's business and those of its competitors, and (2) that iStar's business model was superior to that the models of its competitors. The iStar Defendants deny: (1) the unnumbered allegation masquerading as a caption preceding paragraph 32, (2) the first sentence of paragraph 32, (3) that any of the emphasis in the selectively quoted text in paragraph 32 was contained in the original transcript or in Mr. Sugarman's tone when the selective statements were actually made, and (4) the purposes that paragraph 32 attributes to Mr. Sugarman's selectively quoted statements. Further answering, the iStar Defendants state paragraph 32 contains incomplete quotations and slides from a transcript of the 2007 Investor Day Conference, which as presented are misleading, and the iStar Defendants refer the Court to the transcript and embedded slides which are the best evidence of their contents. The iStar Defendants deny the remaining allegations of paragraph 32.

**33.**    The iStar Defendants admit that during the Investor Day Conference, Mr. O'Connor expressed his opinion that iStar possesses a bias toward relative conservatism with respect to values.  The iStar Defendants deny:  (1) the unnumbered allegation masquerading as a caption immediately preceding paragraph 33, (2) the characterization of Mr. O'Connor's selectively quoted statements contained in paragraph 33, (3) that paragraph 33 quotes the "pertinent part" of Mr. O'Connor's statements, and, (4) that any of the emphasis in the selectively quoted text in paragraph 33 was contained in the original transcript or in Mr. O'Connor's tone when the selective statements were actually made.  Further answering, the iStar Defendants state paragraph 33 contains incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer the Court to the transcript which is the best evidence of their contents.   The iStar Defendants deny the remaining allegations of paragraph 33.

**34.**    The iStar Defendants admit that during the Investor Day Conference, one of the subjects addressed was iStar's risk management processes and Mr. O'Connor disclosed a significant amount of information regarding those processes, the majority of which paragraph 34 does not quote. The iStar Defendants deny:  (1) that Mr. O'Connor "highlighted" iStar's portfolio risk management processes, (2) that paragraph 34 quoted the "pertinent part" of Mr. O'Connor's statements, and (3) that any of the emphasis in the selectively quoted text in paragraph 34 was contained in the original transcript or in Mr. O'Connor's tone when the selective statements were actually made.  Further answering, the iStar Defendants state that paragraph 34 contains incomplete quotations from a transcript of the 2007 Investor Day Conference (*e.g.*, paragraph 34 conceals Mr. O'Connor's statement that iStar's risk rating process is conducted on a quarterly basis), and the iStar Defendants refer the Court to the

transcript which is the best evidence of their contents.  The iStar Defendants deny the remaining allegations of paragraph 34.

35.    The iStar Defendants admit that during the Investor Day Conference, Mr. O'Connor spoke of iStar's credit quality as of September 30, 2007, the loans iStar had identified as non-performing as of September 30, 2007, and the loans on iStar's watch list as of September 30, 2007.  The iStar Defendants further admit that during the Investor Day Conference, a number of slides were shown, including a copy of the slides appearing in paragraph 35, all of which accurately state the "as of" date as September 30, 2007.  The iStar Defendants deny:  (1) the unnumbered allegation masquerading as a caption immediately preceding paragraph 35, (2) that any of the emphasis in the selectively quoted text in paragraph 33 was contained in the original transcript or in Mr. O'Connor's tone when the selective statements were actually made, (3) the allegations contained in paragraph 34 characterizing Mr. O'Connor's selectively quoted statements, and (4) that the selectively quoted text represents the "pertinent part" of Mr. O'Connor's statements or of the Investor Day Conference transcript.  Further answering, the iStar Defendants state paragraph 35 contains incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer the Court to the transcript which is the best evidence of their contents.  The iStar Defendants deny the remaining allegations of paragraph 35.

36.    The iStar Defendants deny:  (1) Mr. O'Connor stated iStar's loss exposure on its loan portfolio was limited; (2) the remaining allegations contained in the first and second sentences of paragraph 36; (3) that any of the emphasis in the selectively quoted text in paragraph 36 was contained in the original transcript or in Mr. O'Connor's tone when the selective statements were actually made, and (4) that paragraph 33 quotes the "pertinent part" of Mr. O'Connor's statements.  Further answering, the iStar Defendants state paragraph 33 contains

incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer the Court to the transcript which is the best evidence of their contents. The iStar Defendants deny the remaining allegations of paragraph 36.

37.     The iStar Defendants admit that during the Investor Day Conference Ms. Rice provided information regarding iStar's financial performance through the end of the Third Quarter, which results iStar had previously announced on November 6, 2007. The iStar Defendants deny:  (1) the unnumbered allegation masquerading as a caption immediately preceding paragraph 37, (2) that any of the emphasis in the selectively quoted text in paragraph 37 was contained in the original transcript or in Ms. Rice's tone when the selectively quoted statements were actually made, (3) the allegations contained in paragraph 37 characterizing Ms. Rice's selectively quoted statements, including but not limited to the allegation that Ms. Rice "minimized" iStar's "short term capital requirements," and (4) that the selectively quoted text was the "pertinent part" of Ms. Rice's statements. Further answering, the iStar Defendants state paragraph 37 contains incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer the Court to the transcript which is the best evidence of their contents. The iStar Defendants deny the remaining allegations of paragraph 37.

38.     The iStar Defendants deny (1) the allegations contained in paragraph 38 characterizing alleged analyst comments regarding iStar' balance sheet or loan portfolio, in particular that the analysts "trumpeted" anything, (2) that the analysts based their comments on anything that "Defendants had told them," (3) that the allegedly quoted text contained in paragraph 38 represents actual quotations of any statements made or that such quotes are complete or accurate, (4) that any of the bolded text contained in paragraph 38 was in the original statements made, (5) that iStar provided the alleged analysts with any information not otherwise publicly available, (6) that iStar adopted or endorsed any of the forward-looking

statements or statements of opinion that paragraph 38 alleges the identified analysts made. Further answering the iStar Defendants state that the allegedly quoted text purports to be extracted from documents which are the best evidence of their contents. The iStar Defendants denies all allegedly quoted statements to the extent they are incomplete or inconsistent with the documents on which paragraph 38 purports be based.

39.    The iStar Defendants admit that on May 2, 2007, iStar filed a Registration Statement with the SEC on a Form S-3, a document that is the best evidence of its contents.  The iStar Defendants deny the allegations in paragraph 39 to the extent these allegations are inconsistent with iStar's Registration Statement.  The iStar Defendants admit that the Form S-3 was a "shelf registration" that allowed iStar to register securities which it could sell at a later date in what is commonly referred to as a "Secondary Offering."  The iStar Defendants deny that the applicable securities regulations "proscribe" any requirements iStar was required to "meet," but admit that iStar's Registration Statement met all the requirements contained in applicable securities regulations.    The iStar Defendants deny the remaining allegations in paragraph 39.

40.    The iStar Defendants admit the allegations in paragraph 40.

41.    The iStar Defendants admit that pursuant to Rule 424(b)(5), iStar filed a Prospectus Supplement with the SEC on December 13, 2007 (the "December 13 Supplement") and refer the Court to this document which is the best evidence of its contents. The iStar Defendants deny that the December 13 Supplement offered to sell any securities and further state that the December 13 Supplement explicitly warns: "The information in this prospectus supplement and the accompanying prospectus is not complete and may be changed. This prospectus supplement and the accompanying prospectus are not an offer to sell these securities and are not soliciting an offer to buy these securities in any state where the offer or sale is not permitted."  The iStar Defendants admit that iStar filed a Prospectus Supplement with the SEC

on December 17, 2007 (the "December 17 Supplement") and refer the Court to this document which is the best evidence of its contents. The iStar Defendants admit the Registration Statement which incorporated the Prospectus and December 17 Supplement, offered to sell 8 million shares to the public through a firm commitment underwriting pursuant to which the underwriters, identified in the December 17 Supplement, committed to purchasing from iStar an aggregate 8 million shares of iStar's common stock at $27.2736 per share from iStar and that the underwriters sold or offered to sell some, or all, of these shares to the public at $28.41 per share. The iStar Defendants deny the remaining allegations in paragraph 42.

42.     The iStar Defendants admit that iStar raised approximately $217.9 million by selling 8 million shares of its common stock to the underwriters pursuant to the Secondary Offering. The iStar Defendants admit that the December 17, 2007 Prospectus Supplement disclosed iStar's intended uses of the proceeds and refer the Court to this document which is the best evidence of its contents. The iStar Defendants deny the remaining allegations in paragraph 42.

43.     The iStar Defendants deny the unnumbered allegation masquerading as a caption immediately preceding paragraph 43 and the allegations in paragraph 43.

44.     The iStar Defendants deny the unnumbered allegation masquerading as a caption immediately preceding paragraph 44. The iStar Defendants admit that on May 2, 2007, iStar filed with the SEC its Registration Statement on Form S-3ASR and refer the Court to this publicly available document as the best evidence of its contents. The iStar Defendants also admit that iStar qualified as an issuer that was entitled to incorporate by reference prior SEC filings into its Registration Statement. Further answering, the iStar Defendants state the remaining allegations in paragraph 44 assert arguments and legal conclusions to which no

answer is required.  To the extent further response is required, the iStar Defendants deny the remaining allegations in paragraph 44.

45.     The allegations in paragraph 45 regarding what a filer utilizing a Form S-3 is "required" to do assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 45 as incomplete and inaccurate characterizations of Form S-3, Item 303(a) of Regulation S-K, and any instructions thereto, which documents that are the best evidence of their contents.

46.     The iStar Defendants deny the allegations in paragraph 46.

47.     The iStar Defendants deny the allegations in paragraph 47.

48.     The iStar Defendants admit the allegations in paragraph 48.

49.     The iStar Defendants admit that paragraph 49 selectively quotes a part of iStar's Third Quarter 10-Q and refers the Court to iStar's November 9, 2007 filing with the SEC on Form 10-Q which is a document that is the best evidence of its contents.  The iStar Defendants deny the allegations in paragraph 49 characterizing the quoted statement and that the selected quote is "pertinent."  The iStar Defendants deny the remaining allegations in paragraph 49.

50.     The iStar Defendants deny the allegations of paragraph 50.

51.     The iStar Defendants admit that deterioration in the economy had an impact on LNT's and WCI's business in 2007 and 2008.  The iStar Defendants deny that either LNT or WCI were in dire financial condition and on the brink of bankruptcy at the time of the Secondary Offering – WCI filed bankruptcy protection on August 4, 2008, almost 8 full months after the Secondary Offering and LNT filed for bankruptcy protection on May 2, 2008 almost 5 full months after the Secondary Offering.  The iStar Defendants deny the remaining allegations in paragraph 51.

52.     The iStar Defendants deny the allegations in paragraph 52.

53.     The iStar Defendants deny (1) the allegations in sentence 1 of paragraph 53, (2) the allegations characterizing the allegedly quoted text, and (3) that the allegedly quoted text contained in paragraph 53 represents actual quotations of any statements made or that such quotes are complete or accurate. Further answering the iStar Defendants state that the allegedly quoted text purports to be extracted from documents which are the best evidence of their contents, and the iStar Defendants deny all allegedly quoted statements to the extent they are incomplete or inconsistent with the documents on which paragraph 53 purports be based. The iStar Defendants deny the remaining allegations in paragraph 53.

54.     The iStar Defendants deny the allegations in paragraph 54.

55.     The iStar Defendants admit iStar issued a press release, incorporated as Exhibit 99.1 to its February 28, 2008 Form 8-K filing, announcing iStar's fourth quarter and fiscal year 2007 financial results, and that this document is the best evidence of its contents. The iStar Defendants deny that the allegations of accurately characterize the disclosures iStar made in its February 28, 2008 press release. Further answering, the iStar Defendants state iStar's February 28, 2008 press release disclosed that "[i]ncluded in [iStar's] fourth quarter earnings were $134.9 million of non-cash charges associated with the impairment of two credits that are accounted for as held-to-maturity debt securities in its Corporate Loan and Debt portfolio. These securities are performing and continue to pay interest. Accounting standards for these securities do not allow for loan loss reserves to be taken on these assets; the standards require that the value be impaired based on a significant drop in market price and on management's current assessment that the decline is other than temporary." The iStar Defendants deny the allegations contained in the last sentence of paragraph 55 and the remaining allegations in paragraph 55.

56.     The iStar Defendants deny the allegations in paragraph 56.

57.     The iStar Defendants deny the allegations in paragraph 57.

58.    The iStar Defendants admit that overall economic and financial conditions deteriorated during the 4th Quarter of 2007 and that this deterioration had an adverse effect on market liquidity. The iStar Defendants deny the remaining allegations in paragraph 58.

59.    The iStar Defendants admit that after the close of iStar's 2007 fourth quarter, when full results for the entire quarter were knowable, iStar recorded a $113 million loan loss provision for the quarter.  The iStar Defendants further admit that $113 million is approximately 57% greater than $72 million, and $72 million is the cumulate amount of the loan loss provisions iStar recorded for the first three quarters of 2007.  The iStar Defendants also admit that iStar's fiscal year is identical to the calendar year and that, therefore, the last three months of each calendar year, including 2007, comprise iStar's fourth quarter.  The iStar Defendants deny the remaining allegations of paragraph 59.

60.    The iStar Defendants deny the allegations in paragraph 60.

61.    The iStar Defendants deny the allegations in paragraph 61.

62.    The iStar Defendants admit iStar issued a press release, incorporated as Exhibit 99.1 to its February 28, 2008 Form 8-K filing, announcing iStar's fourth quarter and fiscal year 2007 financial results, and that this document is the best evidence of its contents.  The iStar Defendants deny that the allegations of accurately characterize the disclosures iStar made in its February 28, 2008 press release. Further answering, the iStar Defendants state iStar's February 28, 2008 press release disclosed that iStar recorded a $113 million loan loss provision in its fourth quarter.  The iStar Defendants deny the allegations contained in the last sentence of paragraph 62 and the remaining allegations in paragraph 62.

63.    The iStar Defendants deny the allegations of paragraph 63.

64.    The iStar Defendants deny the allegations in paragraph 64.

65.    The iStar Defendants deny the allegations in the first sentence of paragraph 65 which mischaracterize the selectively quoted text from iStar's Third Quarter 2007 report on Form 10-Q.  Further answering, the iStar Defendants state iStar's Form 10-Q is a public document and is the best evidence of its contents.  The iStar deny that the quoted selections contained in paragraph 65 accurately reflect iStar's full disclosures, and further deny the allegations in paragraph 65 to the extent they are inconsistent with iStar' Form 10-Q.

66.    The iStar Defendants deny the allegations in paragraph 66.

67.    The iStar Defendants deny the allegations in paragraph 67.

68.    The iStar Defendants deny the allegation masquerading as a caption preceding paragraph 68.  Further answering, the iStar Defendants state that allegations in paragraph 68 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants state:   Form S-3 and Regulation S-K are written documents that are the best evidence of their contents, they admit that iStar complied with Form S-3 and Regulation S-K, and they deny that paragraph 68 accurately summarizes these documents.  The iStar Defendants further deny the remaining allegations in paragraph 68.

69.    The iStar Defendants admit that the Registration Statement incorporated by reference several specifically identified, prior iStar SEC filings, including its 2006 Form 10-K which disclosed specific "Risk Factors" that could impact iStar's business and financial results. The iStar Defendants further admit that, with the benefit of hindsight, the overall U.S. economy declined beginning in the latter half of 2007 and that when the decline was recognized to exist, and when the decline began, the degree of the decline, the causes of the decline, and the future duration and impact of the decline, are matters of opinion which were widely and continuously reported, discussed, debated and opined on by hundreds, if not thousands, of public media

outlets, pundits, economists politicians, and others – worldwide – during the putative class period and up to the present.  The iStar Defendants deny the remaining allegations in paragraph 69.

**70.**     The iStar Defendants deny the allegations in paragraph 70.

**71.**     The iStar Defendants deny the allegation masquerading as a caption preceding paragraph 71.  The iStar Defendants admit that the Registration Statement, Prospectus, and Prospectus Supplement incorporated by reference several of iStar's historical SEC filings, which included iStar's 2006 Annual Report on Form 10-K and its 2007 quarterly reports on Form 10-Q. The iStar Defendants deny that the alleged SEC filings were the only documents incorporated by reference.  Further answering, the iStar Defendants state that iStar's SEC filings are publicly available documents that are the best evidence of their contents and paragraph 71 mischaracterizes these documents.  The iStar Defendants deny the remaining allegations in paragraph 71.

**72.**     The iStar Defendants deny the allegations in paragraph 72.

**73.**     The iStar Defendants admit that the Emerging Issues Task Force ("EITF") Topic D-86, which paragraph 73 purports to quote is contained in a publicly available document that is the best evidence of its contents.  The iStar Defendants deny that allegations of paragraph 73 accurately characterize and completely quote EITF Topic D-86.  The iStar Defendants deny the remaining allegations of paragraph 73.

**74.**     The iStar Defendants admit that the EITF Topic D-86 and AICPA Statement on Auditing Standards ("SAS") No. 1, Subsequent Events (or AU §560), referenced in paragraph 74, are documents that are the best evidence of their contents.  The iStar Defendants deny that paragraph accurately characterizes and completely quotes any of these documents.  The iStar Defendants deny the remaining allegations of paragraph 74.

75.     The iStar Defendants deny that iStar's Third Quarter 10-Q contained any false representations.

76.     The iStar Defendants admit that Regulation S-X, which paragraph 76 apparently purports to quote, selectively, is a document that is the best evidence of its contents.  The iStar Defendants deny that paragraph 76 quotes the "pertinent part" of Regulation S-X and, therefore deny the remaining allegations of paragraph 76.

77.     The iStar Defendants deny the allegations in paragraph 77.

78.     The iStar Defendants deny the allegations in paragraph 78.

79.     The iStar Defendants deny the allegations in paragraph 79.

80.     The iStar Defendants deny the allegations in paragraph 80.

81.     The iStar Defendants deny the allegations in paragraph 81.

82.     The iStar Defendants deny that any of their financial statements failed to conform to GAAP or Regulation S-X requirements and deny the remaining allegations in paragraph 82.

83.     The iStar Defendants deny (1) that paragraph 83 quotes the "pertinent part" of iStar's February 28, 2008 press release, (2) that the selected quotes are complete or accurately reflect iStar's disclosures in the February 28, 2008 press release, and (3) that the bolded text reflects any emphasis in the original text.  Further answering, the iStar Defendants repeat their Answers to paragraphs 55-56 and 62-63 above as if fully set forth herein because paragraph 83 repeats the allegations contained therein.  The iStar Defendants deny the remaining allegations in paragraph 83.

84.     The iStar Defendants admit that on February 28, 2008, iStar held a pre-announced earnings call that any member of the public could listen to and participate in for free.  The iStar Defendants deny (1) that paragraph 84 quotes the "pertinent part" of the call, (2) that any of the bolded text in paragraph 84 appears in the publicly available transcript of the call or was

reflected in the speaker's tone when the statements were made, and (3) that the selected text quoted in paragraph 84 accurately reflects the conference call. Further answering, the iStar Defendants state that a transcript of the call alleged in paragraph 84 exists and is a document that is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 84.

**85.** The iStar Defendants deny the allegations in paragraph 85.

**86.** The iStar Defendants admit that iStar's stock price declined in the few days following February 28, 2008. The iStar Defendants lack knowledge or information to form a belief as to the truth or falsity of the allegation in paragraph 86 attributing the decline to any analyst opinion of iStar and, therefore, deny the same and demand strict proof thereof. The iStar Defendants further deny that paragraph 86 alleges a representative sampling of analyst opinions or that the allegedly quoted statements are accurate or complete. The allegedly quoted statements were apparently extracted from written documents, which are the best evidence of their contents. The iStar Defendants deny the remaining allegations of paragraph 86.

**87.** The iStar Defendants admit that on March 5, 2008, Citibank expressed its opinion and recommendation downgrading iStar stock from "buy" to "hold." The iStar Defendants deny the remaining allegations of paragraph 87.

**88.** The iStar Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that Smith Barney downgraded iStar stock on March 6, 2008 and, therefore deny and demand strict proof of the same. The iStar Defendants admit that on March 6, 2008, iStar announced that Defendant Radesca resigned from his position as iStar's CAO on February 29, 2008 in order to accept a position as chief financial officer at another company.

89.    The iStar Defendants admit that iStar's common stock closed at $13.98 on March 6, 2008.  Further answering, the iStar Defendants state that iStar's common stock closed approximately 14% higher at $15.98 the following day.  The iStar Defendants deny the remaining allegations in paragraph 89.

90.    The iStar Defendants state that iStar's 2007 Annual Report on SEC Form 10-K for the period ending December 31, 2007 was filed with the SEC on February 29, 2008, and this document is the best evidence of its contents.  The iStar Defendants deny the allegations contained in paragraph 90 accurately characterize, summarize or quote this 10-K filing.  The iStar Defendants further deny that the text selectively quoted in paragraph 90 was bolded or otherwise emphasized in iStar's 10-K filing.  The iStar Defendants further deny the allegations of paragraph 90 to the extent that its selective quotes are inconsistent with iStar's 10-K.  The iStar Defendants deny the remaining allegations in paragraph 90.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

91.    The iStar Defendants repeat each and every answer to each and every allegation contained above as if fully set forth herein.   Further answering, for purposes of this Count only, the "iStar Defendants" refers to iStar, Messrs. Sugarman and Radesca and Ms. Rice.

92.    The iStar Defendants admit that Plaintiffs purport to assert claims against "all Defendants" pursuant to Section 11 of the Securities Act.  The iStar Defendants deny that Count I is asserted against individual defendant Mr. O'Connor as the Court, in its March 26, 2009 noted in footnote 1 on page 5, "The Section 11 claim against Defendant O'Conner [sic] is also dismissed, as Plaintiffs have withdrawn that claim." The iStar Defendants deny the remaining allegations in paragraph 92.

93.     The iStar Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 and, therefore, deny the same and demand strict proof thereof.

94.     The iStar Defendants deny the allegations in paragraph 94.

95.     The iStar Defendants admit that iStar was the registrant for the Secondary Offering.  The iStar Defendants deny the remaining allegations in paragraph 95.

96.     The iStar Defendants admit that Sugarman, Rice and Radesca, among others, signed the Registration Statement dated May 1, 2007.  The remaining allegations in paragraph 96 assert arguments and legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny these allegations and the remaining allegations in paragraph 96.

97.     The allegations in paragraph 97 are not directed to the iStar Defendants and thus, no answer is required.  To the extent further response is required, the iStar Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 and, therefore, deny the same and demand strict proof thereof.

98.     The iStar Defendants lack knowledge or information sufficient to form a belief as to the truth of how or when Lead Plaintiffs acquired iStar stock and, therefore, deny the same and demand strict proof thereof.  The iStar Defendants deny that:  (1) any material misstatements and/or omissions were contained in the Registration Statement, Prospectus or Prospectus Supplements, (2) any of these documents was "defective," (3) the price of iStar's stock was caused by the iStar Defendants or "due to material misstatements and/or omissions in iStar's Registration Statement, Prospectus or Prospectus Supplements, and (4) Lead Plaintiffs and the putative class members "sustained damages."  Further answering, the iStar Defendants admit that the daily closing prices of iStar's common stock increased and declined at various points in time

before, during, and after the putative class period for various reasons, none of which are alleged in paragraph 98 and none of which include the making of any material misstatements or omissions by any of the iStar Defendants. The iStar Defendants deny the remaining allegations in paragraph 98.

      **99.**    The iStar Defendants deny the allegations in paragraph 99.

      **100.**    Paragraph 100 asserts arguments and legal conclusions to which no answer is required.

**COUNT II**

**Violations of Section 12(a)(2) of the Securities Act**
**Against All Defendants**

      **101.**    The iStar Defendants repeat each and every answer to each and every allegation contained above as if fully set forth herein.

      **102.**    The iStar Defendants admit that Plaintiffs purport to assert claims against "all Defendants" pursuant to Section 12(a)(2) of the Securities Act. The iStar Defendants deny that Count II is asserted against any of the Individual Defendants as the Court's March 26, 2010 Order dismissed this Count against them. Accordingly, none of the allegations contained in Count II are asserted against the Individual Defendants, Messrs. Sugarman, Radesca, and O'Connor and Ms. Rice and they, therefore, are not required to answer, and are not answering, any of the allegations contained in this Count II. iStar denies the remaining allegations of paragraph 102.

      **103.**    iStar admits that Sugarman, Rice, Radesca, and others, signed the Registration Statement dated May 1, 2007 that included a prospectus and incorporated future prospectus supplements. iStar denies the remaining allegations of paragraph 103.

      **104.**    iStar denies the allegations in paragraph 104.

      **105.**    iStar denies the allegations in paragraph 105.

**106.**    iStar admits that it sold to each of the underwriters identified in the Prospectus Supplements the number shares of iStar common stock specified in the Prospectus Supplements at the price per share disclosed in the Prospectus Supplements.    iStar denies the remaining allegations in paragraph 106.

**107.**    The allegations in paragraph 107 are not directed to iStar and thus, no answer is required. To the extent further response is required, iStar admits that the underwriters participated in the preparation of the Prospectus and Prospectus Supplements, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 107 and, therefore, denies the same and demands strict proof thereof.

**108.**    As set forth more specifically above, iStar denies the allegations in paragraph 108.

**109.**    iStar denies that any untruths or omissions of material fact were contained in the Prospectus or Prospectus Supplements and that Lead Plaintiffs, the putative class members and the market generally was not aware of general economic and iStar specific trends.    iStar denies the remaining allegations in paragraph 109.

**110.**    The allegations in paragraph 110 assert arguments and legal conclusions to which no answer is required.    To the extent further response is required, iStar denies the allegations in paragraph 110.

**111.**    iStar denies the allegations in paragraph 111.

### COUNT III

**Violation of Section 15 of the Securities Act**
**Against the Individual Defendants**

**112.**    The iStar Defendants repeat each and every answer to each and every allegation contained above as if fully set forth herein.

**113.**   The iStar Defendants admit that Plaintiffs purport to assert claims against Defendants pursuant to Section 15 of the Securities Act.   The iStar Defendants deny the remaining allegations in paragraph 113.

**114.**   The allegations in paragraph 114 assert arguments and legal conclusions to which no answer is required.   To the extent further response is required, the iStar Defendants deny the allegations in paragraph 114.

**115.**   The allegations in paragraph 115 assert arguments and legal conclusions to which no answer is required.   To the extent further response is required, the iStar Defendants deny the allegations in paragraph 115.

### Exchange Act Count Allegations

**116.**   The iStar Defendants admit that Plaintiffs purport to define Defendants iStar, Sugarman, Rice, and O'Connor as the "Defendants" of the claims Plaintiffs assert under the Exchange Act.   For purposes of this Count only, the "iStar Defendants" refers only iStar, Messrs. Sugarman and O'Connor and Ms. Rice.

**117.**   The iStar Defendants admit that iStar held its annual Investor Day Conference at the New York Public Library on December 6, 2007.   The iStar Defendants deny the remaining allegations in paragraph 117.

**118.**   The iStar Defendants deny:   (1) the allegations characterizing Mr. Sugarman's statements as well as the allegedly quoted statements attributed to no specific individual, and (2) that any of the emphasis in the selectively quoted text in paragraph 118 was contained in the original transcript or in Mr. Sugarman's tone when the selective statements were actually made. Further answering, the iStar Defendants state paragraph 118 contains selective and incomplete quotations from a transcript of the 2007 Investor Day Conference, and the iStar Defendants refer

the Court to the transcript which is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 118.

**119.** The iStar Defendants deny the allegations characterizing Mr. Sugarman's statements and deny that the purported summary and selective quotation is accurate or complete. Further answering the iStar Defendants state that a transcript of the 2007 Investor Day Conference exists and is the best evidence of its content. The iStar Defendants deny the remaining allegations in paragraph 119.

**120.** The iStar Defendants deny that the selectively quoted and incomplete quote accurately reflects Mr. Sugarman's statements or that the bolded text reflects emphasis in the transcript of the 2007 Investor Day Conference or the tone Mr. Sugarman used when he actually made the statement. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 120.

**121.** The iStar Defendants deny:  (1) the allegations contained in paragraph 121 characterizing Mr. O'Connor's statements, (2) that the selectively quoted and incomplete quote accurately reflects Mr. O'Connor's statements, and (3) that the bolded text reflects emphasis in the transcript of the 2007 Investor Day Conference or the tone Mr. O'Connor used when he actually made the selectively quoted statements. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 121.

**122.** The iStar Defendants deny the allegations in paragraph 122.

**123.** The iStar Defendants deny:  (1) the allegations contained in paragraph 123, (2) that the quoted statement is complete, accurate or reflects the "pertinent part" of Mr. O'Connor's statements, and (3) that the bolded text reflects emphasis in the transcript or tone used when Mr.

O'Connor made the statement selectively quoted. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 123.

124.    The iStar Defendants deny: (1) Mr. O'Connor made any "representations" or "suggestions"; (2) the allegations contained in paragraph 124 accurately characterize any of Mr. O'Connor's statements, (3) the bolded text reflect emphasis in the transcript or tone Mr. O'Connor used when he made the selectively quoted statements; and (4) that Mr. O'Connor's statements of opinion and belief were false when made. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 124.

125.    The iStar Defendants deny (1) the allegations of paragraph 125 characterizing Mr. O'Connor's statements and (2) that the quoted statement is complete or accurate. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 125.

126.    The iStar Defendants deny (1) the allegations of paragraph 126 characterizing Ms. Rice's statements, (2) that the quoted statement is complete or accurate, (3) that paragraph 126 quotes the "pertinent part" of Ms. Rice's statements, and (4) that any of the bolded text in paragraph 126 appears in the transcript of the Conference or was reflected in the speaker's tone when the statements were made. Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents. The iStar Defendants deny the remaining allegations of paragraph 126.

**127.**    The iStar Defendants deny the allegations in paragraph 127.

**128.**    The iStar Defendants deny the allegations in 128.

**129.**    The iStar Defendants deny the allegations in paragraph 129.

**130.**    The iStar Defendants deny (1) that Defendants knew iStar was reasonably likely to increase its loan loss reserves and reported amount of its NPLs and watch list assets by December 31, 2007, (2) the allegations in paragraph 130 characterizing Mr. O'Connor's selectively quoted statements as representations and (3) that the selectively quoted statements are complete or accurate, and (4) that any of the bolded text in paragraph 130 appears in the transcript of the Conference or was reflected in the speaker's tone when the statements were made.  Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents.  The iStar Defendants deny the remaining allegations of paragraph 130.

**131.**    The iStar Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the statements allegedly made by former iStar employees, including whether any of such alleged former employees were "knowledgeable about iStar's loan portfolio" and, therefore, the iStar Defendants deny the same and demand strict proof thereof. The iStar Defendants deny that the alleged statements contained in the bulleted paragraphs in paragraph 131 establish or imply that "economic and financial market conditions were having a devastating effect on iStar's financings."  The iStar Defendants further deny the remaining allegations of paragraph 131.

**132.**    The iStar Defendants deny the allegations in paragraph 132.  Further answering, the iStar Defendants state that the motive alleged in paragraph 132 is contrary to the personal economic interest of iStar directors and officers who acquired shares of iStar common stock

between November 2007 and mid January 2008 and continued to hold these shares long after the putative class period ended.

## Additional Scienter Allegations

**133.**    The iStar Defendants deny the allegation masquerading as a caption preceding paragraph 133 and the allegations in paragraph 133.

**134.**    The iStar Defendants deny the allegations in paragraph 134.

**135.**    The iStar Defendants deny the allegations of paragraph 135.  Further answering, the iStar Defendants state that their alleged awareness of iStar's allegedly "true" financial condition is contradicted by the fact that several iStar directors and officers acquired shares of iStar common stock between November 2007 and mid January 2008, and continued to hold these shares long after the end of the putative class period.

**136.**    The iStar Defendants deny that management's close monitoring of iStar's loan portfolio, decisions to rate loans a "4" or "5," and/or weekly discussions of loans rated high risk, individually or in the aggregate, evidence that (1) the statements made by the iStar Defendants during the Investor Day Conference were false when made or (2) any degree of any iStar Defendant's knowledge or scienter that any statements or alleged omissions made during the Investor Day Conference were false when made.  The iStar further deny (1) the allegations in paragraph 136 characterizing the nature of any iStar Defendant's statements, including those specifically quoted, (2) that the selectively quoted statements are complete or accurate, and (3) that any of the bolded text in paragraph 136 appears in the transcript of the Conference or was reflected in the speaker's tone when the statements were made.  Further answering, as the iStar Defendants have stated repeatedly above, a transcript of the 2007 Investor Day Conference exists and is the best evidence of its contents.  The iStar Defendants deny the remaining allegations of paragraph 136.

**137.**    The iStar Defendants deny the allegations in paragraph 137.

**138.**    The iStar Defendants deny the allegations in paragraph 138.

**139.**    The iStar Defendants admit that iStar is a REIT and federal tax laws require REITs to distribute at least 90% of their net taxable income to shareholders to maintain REIT status, and iStar faces many risks, including liquidity risks which iStar has continuously and explicitly disclosed in its annual reports on SEC Form 10-K and other SEC filings.  The iStar Defendants further admit that, with the benefit of hindsight, a credit crisis began in the U.S.  Further answering, the iStar Defendants state that when that crisis began, when it was first recognized as existing, which industries and businesses were first impacted by the credit crisis, the causes of the crisis, and the future duration and impact of the crisis are matters of opinion which have been widely and continuously reported, discussed, debated and opined on by hundreds, if not thousands, of public media outlets, pundits, economists, politicians, and others – worldwide. The iStar Defendants deny the remaining allegations in paragraph 139.

**140.**    The iStar Defendants deny the allegations in paragraph 140.

**141.**    The iStar Defendants deny the allegations in paragraph 141.

**142.**    The iStar Defendants deny the allegations in paragraph 142.

**143.**    The allegations in paragraph 143 assert arguments and boilerplate legal conclusions to which no answer is required.  To the extent further response is required, the iStar Defendants deny the allegations in paragraph 143.

**144.**    The iStar Defendants deny the allegation masquerading as a caption immediately preceding paragraph 144 and deny the allegations in paragraph 144.

**145.**    The iStar Defendants deny the allegations in paragraph 145.

**146.**    The iStar Defendants deny the allegations in paragraph 146.

**147.** The iStar Defendants admit that on February 28, 2008, the price of iStar's common stock fell from $22.31 at the opening to $20.19 at the close, a drop of approximately 9.5%. The iStar Defendants admit that the price of iStar's common closed at $13.98 on March 6, 2008. The iStar Defendants deny the remaining allegations in paragraph 147.

**148.** The iStar Defendants deny the allegations in paragraph 148.

**149.** The iStar Defendants deny the allegations in paragraph 149.

**150.** The iStar Defendants deny the allegation masquerading as a caption immediately preceding paragraph 150. The iStar Defendants admit that iStar common stock traded on the NYSE, that iStar filed periodic public reports with the SEC, and that iStar communicated with public investors via various methods, including press releases. Further answering, the iStar Defendants state that the remaining allegations in paragraph 150 assert arguments and legal conclusions to which no answer is required. To the extent further response is required, the iStar Defendants deny the allegations in paragraph 150.

**151.** The allegations in paragraph 151 assert arguments and legal conclusions to which no answer is required. To the extent further response is required, the iStar Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 151 and, therefore, deny the same and demand strict proof thereof. The iStar Defendants deny the remaining allegations of paragraph 151, including but not limited to its second sentence.

**152.** The iStar Defendants deny the allegations masquerading as a caption immediately preceding paragraph 152, and the iStar Defendants deny the allegations in paragraph 152.

**153.** The iStar Defendants deny the allegations in paragraph 153.

## COUNT IV

### Violation of Section 10(b) of the Exchange
### Act and Rule l0b-5 Promulgated Thereunder
### Against Defendants iStar, Sugarman, Rice and O'Conner [sic]

154.    The iStar Defendants repeat each and every answer to each and every allegation contained above as if fully set forth herein.

155.    For purposes of this Count IV only, the "iStar Defendants" refers to defendants iStar, Messrs. Sugarman and O'Connor and Ms. Rice only, and the iStar Defendants admit that Plaintiffs refer to Defendants iStar, Sugarman, Rice, and O'Connor as the "Defendants" in this Count IV.

156.    The iStar Defendants deny the allegations in paragraph 156.

157.    The iStar Defendants deny the allegations in paragraph 157.

158.    The iStar Defendants deny the allegations in paragraph 158.

159.    The iStar Defendants deny the allegations in paragraph 159.

## COUNT V

### Violation of Section 20(a) of the Exchange Act
### Against Defendants Sugarman, Rice and O'Conner [sic]

160.    The iStar Defendants repeat each and every answer to each and every allegation contained above as if fully set forth herein.

161.    For purposes of this Count V only, the "iStar Defendants" refers to Messrs. Sugarman and O'Connor and Ms. Rice only, and the iStar Defendants admit that Plaintiffs refer to Defendants iStar, Sugarman, Rice, and O'Connor as the "Defendants" in this Count V.

162.    The iStar Defendants deny the allegations in paragraph 162.

* * * * * *

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Assuming solely for purposes of pleading this defense that any part of the Registration Statement, Prospectus, or Prospectus Supplements, as defined in the Securities Act, contained an untrue statement or omitted any material fact, the claims asserted in the Complaint against the iStar Defendants are barred because Plaintiffs knew of the untruth or omission at the time of the purchase of the security at issue.

### SECOND AFFIRMATIVE DEFENSE

Assuming solely for purposes of pleading this defense that any part of the Registration Statement, as defined in the Securities Act, contained an untrue statement or omitted any material fact, the claims asserted in the Complaint against the iStar Defendants are barred because they made a reasonable investigation of the facts, and the iStar Defendants had reasonable grounds to believe and did believe that the Registration Statement, Prospectus or Prospectus Supplements did not contain an untrue statement or omitted any material fact at the time those documents became effective.

### THIRD AFFIRMATIVE DEFENSE

Assuming solely for purposes of pleading this defense that any part of the Registration Statement, as defined in the Securities Act, contained an untrue statement or omitted any material fact, the claims asserted in the Complaint against the Individual Defendants are barred because, with respect to the parts of the Registration Statement purporting to be made on the authority of an expert or purporting to be a copy of or extract from a report or valuation of an expert, the Individual Defendants had no reasonable ground to believe, and did not believe, at the time the Registration Statement became effective that the statements therein were untrue or that

there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or that such statements did not fairly represent the statement of the expert or was not a fair copy of the or extract from a report or valuation of the expert.

### FOURTH AFFIRMATIVE DEFENSE

Assuming solely for purposes of pleading this defense that any part of the Registration Statement, as defined in the Securities Act, contained an untrue statement or omitted any material fact, the claims asserted in the Complaint against the iStar Defendants are barred because they did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.

### FIFTH AFFIRMATIVE DEFENSE

Assuming solely for the purposes of pleading this defense that Plaintiffs or any of the putative class members suffered damage from the acts about which they complain, those damages are not recoverable from any of the iStar Defendants because all or part of such damages was not proximately caused by any act or omission of iStar Defendants, and/or resulted from causes other than any act or omission of iStar Defendants, including intervening acts of third parties and market forces.

### SIXTH AFFIRMATIVE DEFENSE

The iStar Defendants reserve the right to amend these affirmative defenses and allege further affirmative defenses as appropriate.

**WHEREFORE**, the iStar Defendants respectfully pray that the Court dismiss the Complaint with prejudice; that iStar Defendants be awarded their costs and expenses for

defending this action; and that the Court award iStar Defendants such other and further relief as it deems just and proper.

Dated: May 14, 2010

Respectfully submitted,

**iStar Financial, Inc., Jay Sugarman, Nicholas A. Radesca, Catherine D. Rice And Timothy J. O'Connor**

By:     _/s/ Pamela G. Smith_____
One of Their Attorneys

David H. Kistenbroker
Pamela G. Smith
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200

Anthony L. Paccione (AP-4986)
Matthew D. Parrott (MDP-4623)
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York  10022-2585
(212) 940-8800

Attorneys for iStar Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2010, the foregoing ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS BY DEFENDANTS' ISTAR FINANCIAL INC., JAY SUGARMAN, NICHOLAS A. RADESCA, CATHERINE D. RICE AND TIMOTHY J. O'CONNOR was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system or via Fed Ex upon the following:

Jack G. Fruchter
Abraham, Fruchter & Twersky
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY 11501
Tel: (516) 741-4977

Samuel H. Rudman
David A. Rosenfeld
Mario Alba, Jr.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel: (631) 367-7100

Ramzi Abadou
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058

Richard A. Maniskas
D. Seamus Kaskela
David M. Promisloff
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road

36

Radnor, PA  19087
Tel:  (610) 667-7706

Gregory Campora
Robert M. Cheverie & Associates
Commerce Center One
33 E. River Dr., Ste. 101
East Hartford, CT 06108
D. Seamus Kaskela
Richard A. Maniskas
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

David M. Promisloff
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

A. Robert Pietrzak
Dorothy J. Spenner
Vikeena K. Bonett
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019

Dated: May 14, 2010                                BY:    /s/ Pamela G. Smith_____

                                                                       Pamela G. Smith
                                                                       Katten Muchin Rosenman LLP
                                                                       525 West Monroe Street
                                                                       Chicago, Illinois 60661-3693
                                                                       (312) 902-5200